United States Bankruptcy Court

Eastern District of Pennsylvania

| | |
|---|---|
| In re: | Case No. 22-12804-amc |
| Detra A. Brison | Chapter 13 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0313-2 | User: admin | Page 1 of 2 |
| Date Rcvd: Jun 28, 2023 | Form ID: pdf900 | Total Noticed: 6 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+          Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 30, 2023:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Detra A. Brison, 403 Thompson St., Avondale, PA 19311-1117 |
| cr | + | Associated Bank, P.O. Box 1250, Williamstown, NY 14231-1250 |
| cr | + | Hoffy Unlimited, LLC, c/o Jacob Singer, P.O. Box 645, Horsham, PA 19044-0645 |

TOTAL: 3

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| smg | | Email/Text: megan.harper@phila.gov | Jun 29 2023 00:53:00 | City of Philadelphia, City of Philadelphia Law Dept., Tax Unit/Bankruptcy Dept, 1515 Arch Street 15th Floor, Philadelphia, PA 19102-1595 |
| smg | | Email/Text: RVSVCBICNOTICE1@state.pa.us | Jun 29 2023 00:53:00 | Pennsylvania Department of Revenue, Bankruptcy Division, P.O. Box 280946, Harrisburg, PA 17128-0946 |
| cr | + | Email/PDF: gecsedi@recoverycorp.com | Jun 29 2023 00:54:14 | Synchrony Bank, c/o PRA Receivables Management, LLC, PO Box 41021, Norfolk, VA 23541-1021 |

TOTAL: 3

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.
NONE

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

| | | |
|---|---|---|
| Date: Jun 30, 2023 | Signature: | /s/Gustava Winters |

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 28, 2023 at the address(es) listed below:

| Name | Email Address |
|---|---|

District/off: 0313-2    User: admin    Page 2 of 2
Date Rcvd: Jun 28, 2023    Form ID: pdf900    Total Noticed: 6

KENNETH E. WEST
    ecfemails@ph13trustee.com philaecf@gmail.com

KENNETH E. WEST
    on behalf of Trustee KENNETH E. WEST ecfemails@ph13trustee.com philaecf@gmail.com

MARK A. CRONIN
    on behalf of Creditor Associated Bank bkgroup@kmllawgroup.com

MICHAEL PATRICK FARRINGTON
    on behalf of Creditor Associated Bank mfarrington@kmllawgroup.com

SARAH K. MCCAFFERY
    on behalf of Creditor Hoffy Unlimited LLC ckohn@hoflawgroup.com

STEPHEN M HLADIK
    on behalf of Creditor Hoffy Unlimited LLC shladik@hoflawgroup.com, ckohn@hoflawgroup.com

TIMOTHY ZEARFOSS
    on behalf of Debtor Detra A. Brison tzearfoss@aol.com

United States Trustee
    USTPRegion03.PH.ECF@usdoj.gov

TOTAL: 8

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 13 |
| | : | |
| DETRA A. BRISON, | : | |
| | : | Bankruptcy No. 22-12804-AMC |
| DEBTOR | : | |
| _____ | : | |

## ORDER

AND NOW, this 28th day of June 2023, upon consideration of Hoffy Unlimited, LLC's ("Movant") "Motion for Retroactive Relief from the Automatic Stay And Co-Debtor Stay Under 11 U.S.C. § 362 And § 1301 *Nunc Pro Tunc*" ("Stay Relief Motion"); Detra A. Brison's ("Debtor") opposition response; Movant's supplemental brief; and Debtor's supplemental memorandum; and after multiple hearings, the Court hereby finds as follows:

1. Movant holds a first lien mortgage, dated November 12, 2005 ("Mortgage"), on the Debtor's real property located at 403 Thompson Street, Avondale, PA ("Property"). Case No. 22-12804 ECF No. ("ECF") 36 (hereinafter "Stay Relief Mot.") ¶ 4. The Mortgage is executed by Debtor and James H. Norman ("Mr. Norman"), a non-filing co-debtor. Stay Relief Mot. ¶ 2 n.1; ECF 38 (hereinafter "Resp.") ¶ 2. The Property is occupied by Debtor and Mr. Norman as their primary residence. Stay Relief Mot. ¶ 2; Resp. ¶ 2.

2. The Mortgage matured on November 12, 2020. Stay Relief Mot. ¶ 4.

3. Due to Debtor's failure to pay the Mortgage in full upon maturity, Movant commenced an *in rem* action in mortgage foreclosure in the Chester County Court of Common Pleas ("CCP") to enforce its Mortgage lien against the Property ("Foreclosure Action"). Stay Relief Mot. ¶ 5.

4. While the Foreclosure Action was pending, Movant reached a settlement with Debtor and Mr. Norman. Stay Relief Mot. ¶ 7; Resp. ¶ 7.

1

5. On March 18, 2022, Movant, Debtor, and Mr. Norman entered into a settlement stipulation whereby the parties agreed, *inter alia*, to the entry of an *in rem* judgment in favor of Movant against the Property in the amount of $107,697.27 plus interest and costs in exchange for Movant waiting until on or after June 15, 2022 to file for a writ of execution to expose the Property for sheriff's sale. Stay Relief Mot. ¶ 8, Ex. A; Resp. ¶ 8.

6. On March 24, 2022, the CCP approved the settlement stipulation and entered judgment in favor of Movant against the Property in the amount of $107,697.27 plus interest and costs in the Foreclosure Action ("Foreclosure Judgment"). Stay Relief Mot. ¶ 9, Ex. A; Resp. ¶ 9.

7. On June 28, 2022, Movant filed a writ of execution scheduling a sheriff's sale of the Property for October 20, 2022. Stay Relief Mot. ¶ 11. Debtor and Mr. Norman were served with notice of the sheriff's sale on July 27, 2022. Stay Relief Mot. ¶ 12; Resp. ¶ 12.

8. On October 19, 2022, the evening before the sheriff's sale of the Property was scheduled to take place, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Stay Relief Mot. ¶ 13; Resp. ¶ 13. Schedule A, filed the same day, values the Property at $50,000. Case No. 22-12804 ECF 1. Schedule I, also filed that day, discloses Debtor's household monthly gross income as $4,023. *Id.* Per Schedule J, filed the same day, the Debtor's monthly net income amounts to $860, with $500 allocated to payment of the Mortgage, leaving $1,360 per month available towards that obligation. *Id.* Finally, Debtor also filed a chapter 13 plan on the same day he filed his petition and schedules ("Plan"). *Id.* at ECF 7.

2

9. Movant claims that neither the sheriff nor the Movant was timely notified of the bankruptcy filing, and as such, the sale of the Property proceeded on October 20, 2022. Stay Relief Mot. ¶ 14. Movant was the winning bidder at the sale. *Id*.

10. On October 28, 2022, the Bankruptcy Noticing Center sent Official Form 309I "Notice of Chapter 13 Bankruptcy Case" via first class mail to "Hoffy Unlimited LLC" at "200 W. Main St., Ste 109, Lansdale, PA 19446-2036[.]" Case No. 22-12804 ECF 14.

11. On December 5, 2022, the sheriff's deed for the Property was recorded. Stay Relief Mot. ¶ 15. Movant claims that Movant only became aware of the bankruptcy filing on January 4, 2023. *Id.* ¶ 16.

12. On April 7, 2023, Movant filed the Stay Relief Motion seeking to have the Court annul the automatic stay *nunc pro tunc* to retroactively validate the sheriff's sale of the Property and recording of the sheriff's deed arguing, *inter alia,* that with the entire Mortgage due and owing due to it maturing pre-petition, no equity in the Property, and no ability to propose a confirmable plan, relief from the automatic stay should be granted retroactively to complete the foreclosure of the Property. Stay Relief Mot. ¶¶ 21, 22, 23, 26(a). The Stay Relief Motion avers that as of the petition date the outstanding debt owed to Movant "on this matured loan" totaled $112,619.08.[1] *Id.* at ¶ 19.

13. On April 12, 2023, Debtor filed a response in opposition to the Stay Relief Motion. Case No. 22-12804 ECF 38.

14. On May 16, 2023, a hearing was held on the Stay Relief Motion. Case No. 22-12804 ECF 42. The Court requested supplemental briefing from the parties and continued the hearing to June 27, 2023. *Id.*

---

[1] The Stay Relief Motion also avers that "[w]hen the debt is amortized over 60 months with the stated interest rate, Debtor would be obligated to pay $2,229.99 per month…" Stay Relief Mot. ¶ 22.

3

15. On May 26, 2023, the Movant filed its supplemental brief. *Id.* at ECF 43.

16. On June 8, 2023, Debtor filed an amended chapter 13 plan ("Amended Plan") proposing, *inter alia*, to pay the allowed secured claim to Movant in full in the amount of $50,000, plus a present value interest rate of 10% for a total of $63,741. *Id.* at ECF 45.

17. On June 9, 2023, Debtor filed her supplemental brief, arguing primarily that § 1322(c)(2) permits her to birfurcate the Movant's undersecured claim into secured and unsecured components and provide for payment of the reduced allowed secured claim through § 1325(a) and, as such, stay relief should not be retroactively granted because Debtor can propose a potentially confirmable plan to pay Movant's entire secured claim in full over the life of the plan. *Id.* at ECF 46 at 1-2.

18. Pursuant to 11 U.S.C. § 362(d),

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or] with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization…

19. Although actions taken in violation of the stay are void, they may be revitalized by retroactive annulment of the stay. *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007); *In re Coletta*, 380 B.R. 140, 147 (Bankr. E.D. Pa. 2007). While courts have broad discretion in granting stay relief, they should only annul the stay in exceptional circumstances. *(PHH Mortg. Corp. v. Cardiello (In re Vitale),* 469 B.R. 595, 598 (Bankr. W.D. Pa. 2012) ("Bankruptcy courts are given wide latitude to balance the equities when granting relief from the automatic stay."); *In re Coletta,* 380 B.R. at 147 ("The stay should be annulled only in exceptional circumstances."); *Blaylock v. Phila. Hous. Auth. (In re Blaylock),* 301

4

B.R. 443, 448 (Bankr. E.D. Pa. 2003) ("Clearly this action is only taken in exceptional circumstances.").

20. To determine whether to retroactively annul the stay, courts must balance the equities and consider the totality of the circumstances, such as whether the creditor had knowledge of the debtor's bankruptcy filing; whether the debtor engaged in inequitable conduct or unreasonable or dishonest behavior, such as abusive and/or repetitive bankruptcy filings; whether the creditor would be prejudiced; whether the debtor filed the petition in bad faith, whether a motion for relief from the stay rather than to annul it would have been granted; and whether the property is necessary for an effective reorganization,. *In re Myers*, 491 F.3d at 129; *In re Speights,* No. 08–11543DWS, 2008 WL 2096798, at *2 (Bankr. E.D. Pa. May 15, 2008); *In re Coletta,* 380 B.R. at 147; *In re Wilkerson,* No. 04–31484DWS, 03–36593DWS, 2004 WL 2977564, at *3 (Bankr. E.D. Pa. Dec. 8, 2004); *In re Siciliano,* 167 B.R. 999, 1008 (Bankr. E.D. Pa. 1994). None of these factors are considered dispositive. *In re Speights,* 2008 WL 2096798, at *2.

21. In considering the totality of the circumstances, Movant claims to have had no knowledge of the bankruptcy filing when the sale of the Property proceeded, and to the extent Debtor failed to notify Movant of the filing in advance of the sheriff's sale that conduct would certainly be unreasonable. *In re Kohar,* 525 B.R. 248, 258 (Bankr. W.D. Pa. 2015) (characterizing failure to inform sheriff and creditor of bankruptcy filed minutes before sheriff's sale as unreasonable).

22. That said, this only appears to be Debtor's first bankruptcy case, which weighs in her favor, as most cases granting retroactive stay relief involve serial filers. *See e.g., In re Kohar,* 525 B.R. at 258 (finding inequitable conduct where debtor had filed *eight*

5

previous petitions and failed to inform the sheriff and creditor of most recent filing minutes before the sale); *In re Chavannes,* No. 13–18075REF, 2014 WL 1917681, at *14 (Bankr. E.D. Pa. May 13, 2014) (finding inequitable conduct where debtor had filed three bankruptcies in three years); *In re Coletta,* 380 B.R. at 151-52; *In re Glendenning,* 243 B.R. 629, 637 (Bankr. E.D. Pa. 2000) (finding no inequitable or abusive behavior despite the fact that the debtor had filed *four* prior bankruptcies and his creditors proceeded with a sheriff's sale with no knowledge of the petition). While Debtor's bankruptcy filing may have frustrated Movant, neither the settlement stipulation nor Foreclosure Judgment included any provisions restricting Debtor's right to file.

23. Furthermore, while Movant would admittedly be prejudiced by not annulling the stay due to having to incur the costs associated with conducting another sheriff's sale, Debtor does appear able to propose a potentially confirmable plan of reorganization for which the Property would be necessary.

24. By way of background, as summarized by Judge Frank:

> [g]enerally, 11 U.S.C. § 1322 sets out the types of provisions a debtor may include in a chapter 13 plan. One significant rehabilitation tool accorded a chapter 13 debtor is the right to cure prepetition defaults. See 11 U.S.C. § 1322(b)(5). Another part of the chapter 13 toolkit is found in § 1322(b)(2), which authorizes the modification of the rights of both secured and unsecured creditors. Both § 1322(b)(2) and (b)(5) permit a debtor to devise a plan that stretches out over time payments that the debtor cannot otherwise pay in accordance with the contract terms and applicable nonbankruptcy law. As mentioned earlier, § 1322(b)(2) includes a limitation on the power to modify certain claims secured only by real property that is the debtor's principal residence.

*In re Bernadin,* 609 B.R. 26, 42-43 (Bankr. E.D. Pa. 2019).

25. Pursuant to § 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the

6

debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

26. While § 1322(b)(2) ordinarily prohibits the modification of secured claims secured only by a security interest in real property that is the debtor's principal residence, § 1322(c)(2) provides that

> [n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law –
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

27. The term "original payment schedule" refers to the last payment due under the original note. *In re Bernadin,* 609 B.R. at 46.

28. "Section 1325 of the Bankruptcy Code sets forth the criteria a debtor's proposed repayment plan must meet for a bankruptcy court to confirm the plan." *Hurlburt v. Black*, 925 F.3d 154, 159 (4th Cir. 2019). Pursuant to § 1325(a)(5),

> "the court shall confirm a plan if – (5) with respect to each allowed secured claim provided for by the plan – (A) the holder of such claim has accepted the plan; (B) (i) the plan provides that – (I) the holder of such claim retain the lien securing such claim until the earlier of – (aa) the payment of the underlying debt determined under nonbankrutpcy law; or (bb) discharge under section 1328; and (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable bankruptcy law; (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and (iii) if – (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or (C) the debtor surrenders the property securing such claim to such holder.

29. Thus, as recently explained by the Fourth Circuit Court of Appeals ("Fourth Circuit"),

7

> Section 1325(a)(5) provides that a court can confirm a plan's proposed treatment of a secured claim if one of three conditions is satisfied: (1) '[t]he secured creditor accepts the plan,' (2) 'the debtor surrenders the property securing the claim to the creditor,' or…(3) 'the debtor invokes the so-called 'cram down' power.' Under the cram down option, which is set forth in Section 1325(a)(5)(B), 'the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim,…and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the *allowed secured claim…*' (internal citations omitted) (emphasis in original).

*Hurlburt,* 925 F.3d at 159 (internal citations omitted) (emphasis in original).

**30.** Ultimately, based on the foregoing,

> 'the specific context in which the language is used, and the broader context of the statute as a whole,' establishes that Section 1322(c)(2) is best read to authorize modification of 'claim[s],' not just 'payment[s],' and therefore that a Chapter 13 plan may bifurcate a claim based on an undersecured homestead mortgage, the last payment for which is due prior to a debtor's final payment under a repayment plan, into secured and unsecured components and cram down the unsecured component.

*Id.* at 161 (internal citations omitted).

In fact, every court that has considered the issue has reached that exact conclusion. *Id.* at 156 ("we now align our circuit with every other court that has considered this issue to hold that the plain text of 11 U.S.C. § 1322(c)(2) authorizes modification of such claims, not just the payment schedule for such claims, including through bifurcation and cram down.").

**31.** As such, the plain language of § 1322(c)(2) exempts from § 1322(b)(2)'s anti-modification provision claims based on undersecured homestead mortgages for which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due, and thus allows bifurcation of such claims into secured and unsecured components. *Id.* at 164. This is equally applicable to homestead mortgages

8

which matured pre-petition.[2] *In re Vazquez Marcano*, No. 22-00289 (ESL), 2023 WL 2190612, at *4 (Bankr. D. Puerto Rico Feb. 23, 2023) ("Bankruptcy Courts have routinely held that Section 1322(c)(2) is applicable where a debt matures, not just prior to the conclusion of the plan, but prior to the filing of the case."); *In re Harris*, 2022 WL 953483, at *1 (Bankr. E.D. Wis. March 16, 2022).

32. The parties appear to agree that there is no equity in the Property. *See* Stay Relief Mot. ¶ 19, 23; Case No. 22-12804 ECF 46 at 2. However, there is no genuine dispute that the Mortgage is secured only by real property that is the Debtor's principal residence, and that the maturity date fell before the date on which the final payment under the plan is due, since it matured pre-petition. *See* Stay Relief Mot. ¶¶ 2, 4; Case No. 22-12804 ECF 46 at 1. Accordingly, the Movant's secured claim falls within § 1322(c)(2) and may be bifurcated into secured and unsecured components under § 1325(a)(5) in order to cram down the Movant's secured claim to its secured value, making the Debtor's proposed plan potentially confirmable.

33. Furthermore, Debtor clearly needs her present home as a basis for her economic reorganization and rehabilitation. *See e.g., In re Chang*, 185 B.R. 50, 51 (Bankr. N.D. Ill. 1995). The Property is Debtor's principal residence, and in order for her to reorganize effectively, she and her family must have some place to live. *See e.g., id.* at 52.

34. Ultimately, particularly given that Debtor's Amended Plan is potentially confirmable due to the permitted cram down of this matured loan to only its secured value and that Debtor

---

[2] Section 1322(c)(2) applies to short term mortgages, mortgages with balloon payments maturing before the date on which the last payment under the plan is due, and long term mortgages maturing prior to the date on which the last payment under the plan is due, but not to cases in which solely a default or mortgage foreclosure accelerated the mortgage (when the loan would otherwise mature after completion of the chapter 13 plan). *In re Tekavec*, 476 B.R. 555, 557 (Bankr. E.D. Wis. 2012); *In re Rowe,* 239 B.R. 44, 51 (Bankr. D. N.J. 1999). One must look to the original payment schedule of the mortgage to determine whether § 1322(c)(2) is implicated. *Barbone v. Partners for Payment Relief DE II, LLC (In re Barbone)*, 2014 Bankr. LEXIS 4240, at *3 (Bankr. M.D. Pa. Oct. 3, 2014).

9

is not a serial filer, this is not one of those extraordinary cases warranting retroactive annulment of the automatic stay.[3]

**35.** As such, the Stay Relief Motion is DENIED.

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[3] To the extent the Movant takes issue with, for example, the amount of interest proposed in the Amended Plan, the asserted value of the Property, or the calculation of the value of the secured component of the claim, the Movant may raise these issues in connection with any objection to confirmation of the Amended Plan. This is merely a summary proceeding, and the Court only determines for purposes of this Stay Relief Motion that the Debtor is permitted to bifurcate the Movant's claim into secured and unsecured portions as proposed in the Amended Plan, making it potentially confirmable.